**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ABDUL BARI RAHMAN et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 23-3235 (JDB)** |
| **ANTONY J. BLINKEN et al.,** | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Plaintiff Abdul Bari Rahman, along with his wife and three children, alleges that various government officials (collectively, the "State Department") improperly revoked Rahman's Chief of Mission approval for an Afghan Special Immigrant Visa in violation of his due process rights, the Administrative Procedure Act ("APA"), and the All Writs Act.  He further alleges that the State Department unreasonably delayed adjudicating his pending appeal of the State Department's revocation of his Chief of Mission Approval in violation of the APA, the Declaratory Judgment Act, and the Mandamus Act.  Finally, he seeks an order granting derivative relief for his children under the Child Status Protection Act ("CSPA").  Before the Court is the State Department's motion to dismiss Rahman's complaint.  For the following reasons, the Court will grant the motion.

**Background**

The following facts are drawn from the amended complaint and matters of which the Court may take judicial notice.  See Gun Owners of Am., Inc. v. Fed. Bureau of Investigation, 594 F. Supp. 3d 37, 42 (D.D.C. 2022).[1]

---

[1] The Court agrees that because the administrative record is not necessary for the Court's decision, the State Department does not need to file a certified list of the contents of the administrative record pursuant to Local Civil Rule 7(n).  See Arab v. Blinken, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022).

## I.   Statutory Background

In 2009, Congress enacted the Afghan Allies Protection Act ("AAPA"), which was "intended to provide [Afghans with] immigrant visas and to protect Afghans who had worked on behalf of the US government and were in fear of their lives."  Am. Compl. for Writ of Mandamus & Declaratory Relief Under APA & All Writs Act, as well as Mandamus [ECF No. 15] ("Compl.") ¶¶ 14, 32 (citing Pub. L. 111-8, §§ 601–02, 123 Stat. 807).  Pursuant to the AAPA, certain Afghan nationals may receive special immigrant status if they:

> (1) were or are employed by or on behalf of the United States Government in Afghanistan on or after October 7, 2001, for not less than one year; (2) provided faithful and valuable service to the United States Government; and (3) experienced or are experiencing an ongoing serious threat as a consequence of their employment by the United States Government.

Compl. ¶ 35 (quoting Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. ("Allies") v. Pompeo, Civ. A. No. 18-01388 (TSC), 2019 WL 367841, at *2 (D.D.C. Jan. 30, 2019) (cleaned up)).  As part of this (fourteen-step) process, an applicant must first submit an application for Chief of Mission ("COM") approval.  A Chief of Mission is "the principal officer in charge of a diplomatic mission of the United States or of a United States office abroad which is designated by the Secretary of State as diplomatic in nature, including any individual assigned under section 3982(c) to be temporarily in charge of such a mission or office."  Foreign Service Act, 22 U.S.C. § 3902(3) (1980).  A petitioner's application for COM approval must include "a statement of credible threat detailing the ongoing threat to the applicant as a result of the applicant's service and a letter of recommendation from a supervisor attesting to the applicant's faithful and valuable service."  Allies v. Pompeo, 2019 WL 367841, at *3 (internal quotation marks omitted).  The National Visa Center ("NVC")'s Afghan Unit then reviews the application and makes a recommendation to the COM's designated approving official, who either approves or

denies the application.  Compl. ¶¶ 23–24.  An individual whose application is denied has a statutory right to appeal the decision within 120 days.  Id. ¶ 25.

If the COM approves the application, an applicant then submits a Form I-360 petition for Special Immigration Visa ("SIV") to the United States Citizenship and Immigration Services ("USCIS").  See id. ¶ 73.  USCIS then adjudicates the petition and NVC determines whether the applicant is eligible for a visa.  Allies v. Pompeo, 2019 WL 367841, at *3.  An eligible applicant then interviews with a consular officer and, if confirmed eligible, undergoes a medical examination and is finally issued an SIV.  Id.

## II.    Factual Background

Dr. Abdul Bari Rahman is a non-citizen, Afghan national currently residing in the United States on a two-year humanitarian parole.  Compl. ¶ 7; Pls.' Suppl. Br. [ECF No. 30] at 1–2.[2] Between 2011 and 2014, Rahman worked for BNN Logistics ("BNN"), a company that contracted with the U.S. Army to transport fuel within Afghanistan.  Compl. ¶¶ 8, 45.  In 2012, while serving as BNN's CEO, Rahman alerted U.S. Army personnel that BNN was pilfering fuel and submitting fraudulent invoices to the U.S. Army.  Id. ¶¶ 45–57.  Rahman then stepped down from his position as CEO and eventually left BNN in 2014, taking a position with Red Bobtail Transportation ("RBT"), another U.S. contractor.  Id. ¶¶ 57–61.  In 2016, Rahman left RBT to become the Deputy Minister for Commerce and Industries of the former government of Afghanistan.  Id. ¶ 68.

Rahman applied for, and received, COM approval to submit an SIV petition based on his employment with RBT.  Id. ¶¶ 71–72.  The COM approval found that he met the requirements for

---

[2] When Rahman initially filed the complaint, he was temporarily residing in Turkey.  Compl. ¶ 11.  In August 2024, Rahman requested leave to supplement the complaint with information regarding his parole.  See Req. for Leave to Suppl. Compl. Under R. 15(d) [ECF No. 27].  The Court then ordered the parties to file supplemental briefing regarding Rahman's change in circumstances and its effect, if any, on the issues in this case.  See August 14, 2024 Min. Order.  The parties agree Rahman's status does not moot the case.  See Pls.' Suppl. Br. at 3–5; Defs.' Suppl. Br. Regarding Change in Circumstances [ECF No. 31] at 5.

Afghan SIV, including that he "has provided faithful and valuable service to the United States Government or the International Security Assistance Force" and that he "has experienced or is experiencing an ongoing serious threat as a consequence of the employment." Id. ¶ 72.

Rahman then submitted an I-360 form on behalf of himself, his wife, and his three then-minor children (who are now over twenty-one). Id. ¶¶ 2, 73. USCIS conditionally approved his SIV petition and Rahman's family participated in an SIV interview at the U.S. embassy in Kabul on September 19, 2018. Id. ¶¶ 75–76. Following the interview, Rahman's case was refused and placed in "administrative processing" pursuant to § 221(g) of the Immigration and Nationality Act ("INA"). Id. ¶¶ 76–77; see 8 U.S.C. § 1201(g). On April 14, 2019, Rahman returned for a follow-up interview, at which point he was informed that a former BNN employee had provided the U.S. embassy in Kabul with negative comments about him. Id. ¶ 78. Rahman believed that he adequately rebutted the complaints, which he alleges were made in retaliation for acting as a whistleblower at BNN. Id. On September 14, 2019, NVC informed Rahman that his family's visa processing was complete and instructed them to undergo medical examinations and prepare their passports for the SIV; Rahman's family completed those steps on October 17, 2019. Id. ¶¶ 79–80.

On July 5, 2020, the State Department returned Rahman's case to a COM committee for revocation. Id. ¶ 81. On August 3, 2021, Rahman fled to Turkey due to the United States' withdrawal from Afghanistan, though his wife and two of his children remain in Afghanistan. Id. ¶¶ 69–70; Pls.' Suppl. Br. at 2. On August 20, 2021, the embassy issued a revocation of Rahman's COM approval, stating that "[g]iven that your [previous] employment was terminated for cause for security reasons, you do not meet the requirement of faithful and valuable service to the U.S.

government."  Compl. ¶¶ 82–83.[3]  Rahman appealed the revocation on September 14, 2021; his appeal remains pending.  Id. ¶¶ 85–86.

Rahman filed the present suit against the State Department on October 30, 2023.[4]  Rahman challenges the revocation of his COM approval as a violation of the APA and his due process rights (Counts Four, Five, and Seven).  Id. ¶¶ 99–100.  He further contends that the State Department's delay in adjudicating the appeal of his COM revocation is unlawful because the State Department is required to adjudicate his application within a "reasonable time" of nine months (Counts One, Two, and Three).  See id. ¶¶ 90–98.  Finally, he argues that his children should retain their status as minor children derivative visa applicants pursuant to the AAPA and CSPA (Count Six).  Id. ¶¶ 101–03.  He thus seeks a court order compelling the State Department to adjudicate his appeal of his COM revocation, as well as a court order setting aside his COM revocation.  Id. ¶¶ 98, 104; see also id. at 28.

The State Department moved to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See Corrected Mem. of Law in Supp. of Defs.' Mot. to Dismiss [ECF No. 17-1] ("Mot.").[5]  Rahman filed an opposition, see Opp'n to Mot. [ECF No. 20] ("Opp'n"), and the State Department filed a reply, see Defs.' Reply in Supp. of Mot. [ECF No. 25] ("Reply").  The International Refugee Assistance Project ("IRAP"), with leave of Court, submitted a brief of amicus curiae in support of Rahman.  See Br. of Amicus Curiae IRAP, Inc. in Supp. of Opp'n [ECF No. 26] ("IRAP Br.").  The motion is now fully briefed and ripe for decision.

---

[3] Rahman received the issuance on September 1, 2021.  Compl. ¶ 82.

[4] Rahman filed an amended complaint on March 22, 2024, which now serves as the operative complaint.

[5] The State Department initially filed its motion to dismiss on April 12, 2024, see Mem. of Law in Supp. of Mot. [ECF No. 16-1], but filed a corrected motion on April 17, 2024 to correct its discussion of the exceptions to the doctrine of consular nonreviewability, see Defs.' Notice of Corrected Filing Regarding the Mem. of Law in Supp. of Mot. [ECF No. 17] at 1.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  At the motion to dismiss stage, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor," Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but should not credit "legal conclusions couched as factual allegations," Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam).

Courts also apply the 12(b)(6) standard when assessing a facial (rather than factual) challenge to a complaint's jurisdictional allegations under Rule 12(b)(1).  See Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023).

## Analysis

The State Department moves to dismiss (1) Rahman's substantive challenge to his COM revocation, (2) Rahman's unreasonable delay claims, and (3) Rahman's claim for his children under the CSPA.  The Court will address the State Department's arguments as to each claim in turn.

## I.   Rahman's Substantive Challenge

With respect to Rahman's substantive COM revocation claims, the State Department argues that (1) Rahman lacks standing to raise a due process violation associated with his COM revocation, and (2) the consular nonreviewability doctrine precludes judicial review of Rahman's challenge under the APA and All Writs Act.

### A.  Standing

The State Department first contends that Rahman lacks standing to assert that "[t]he US State Department's revocation of the COM approval lacked a facially legitimate and bona fide factual basis," and thus violated his Fifth Amendment right to due process.  Compl. ¶ 100; accord Mot. at 9–11.  To establish standing, a plaintiff must demonstrate, inter alia, that he has suffered an injury in fact.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  To prove an "injury in fact," a plaintiff must demonstrate that he has suffered "an invasion of a legally protected interest."  Id.  Where the interest's "asserted legal source—whether constitutional, statutory, common law or otherwise—does not apply or does not exist," Barhoumi v. Obama, 234 F. Supp. 3d 84, 86 (D.D.C. 2017), the plaintiff "has no legally protected interest and thus no standing to sue," Claybrook v. Slater, 111 F.3d 904, 907 (D.C. Cir. 1997).

"[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution."  Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 140 S. Ct. 2082, 2086 (2020).  But Rahman now resides in the United States, and "the Supreme Court has applied the Constitution to aliens in the United States and in U.S. territories."  Al Bahlul v. United States, 767 F.3d 1, 76 (D.C. Cir. 2014) (Kavanaugh, J., concurring in part).  The Court thus considers whether Rahman possesses a constitutional right to enter the United States.  He does not.  The Supreme Court has made clear that "foreign nationals seeking admission have no constitutional right to entry."  Trump v. Hawaii, 138 S. Ct. 2392, 2419 (2018).  Although courts have largely considered this issue in the context of a nonresident alien, nothing in those cases, which focus on the government's "fundamental sovereign attribute" to admit and exclude foreign nationals, indicates that a foreign national residing temporarily in the United States would be treated any differently.  Id. at 2418 (internal quotation marks omitted); see also Kleindienst v. Mandel, 408 U.S. 753, 761–62 (1972) (referencing Congress's "almost

continuous attention . . . to the problems of immigration and of excludability of certain defined classes of aliens"); Udugampola v. Jacobs, 795 F. Supp. 2d 96, 98 n.1 (D.D.C. 2011) ("[Non-citizen plaintiff] has no constitutional right to enter the United States and also does not have standing to seek review of his visa denial."); Van Ravenswaay v. Napolitano, 613 F. Supp. 2d 1, 5 (D.D.C. 2009) ("[N]on-resident aliens lack standing to challenge the determinations associated with their visa applications, which belong to the political and not judicial branches of government.").[6]

Rahman responds that he has standing to sue because he "will suffer an injury if [his] appeal is not adjudicated immediately" and the State Department has a "nondiscretionary duty to adjudicate Afghan[] SIV applications within a nine-month period of time, as per the [AAPA]." Opp'n at 4–5. This argument misses the mark, as challenging the delay in the adjudication of his COM revocation appeal is distinct from challenging the revocation itself. See, e.g., Khoshrou v. Blinken, Civ. A. No. 22-2859 (CKK), 2023 WL 4930086, at *3 (D.D.C. Aug. 2, 2023) ("It is true that nonresidents lack standing to challenge decisions associated with their visa applications. However, unadmitted nonresidents do have standing to challenge delays in the processing of their visa applications." (citations omitted)). The Court thus concludes, in line with Supreme Court and D.C. Circuit precedent, that Rahman does not have standing to bring a due process claim challenging the revocation of his COM approval.

With respect to his statutory right to challenge his COM revocation, Rahman contends that he has "prudential and statutory standing" to sue under the APA because he was "adversely affected or aggrieved by agency action." Opp'n at 5–9. In support of this position, Rahman argues

---

[6] Even when courts review such decisions in order to determine "whether the Executive gave a 'facially legitimate and bona fide' reason for its action," such reviews are only conducted when "the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." Trump v. Hawaii, 139 S. Ct. at 1419 (emphasis added).

that noncitizen plaintiffs "have a right to have their cases adjudicated," and that Congress imposed a nine-month timetable on the State Department to adjudicate SIV applications.  Opp'n at 6–8 (quoting Iddir v. Immigr. & Naturalization Serv., 301 F.3d 492, 500 (7th Cir. 2002)).  Congress recognized a "right to reasonably expeditious agency action when it passed the APA," Khan v. Blome, Civ. A. No. 22-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022), and the Court will again emphasize the distinction between an applicant's right to adjudication of a visa application and an applicant's right to obtain a visa.  But regardless, the State Department does not dispute Rahman's right to challenge the revocation of his COM approval under the APA or All Writs Act; instead, the State Department argues that the Court's review of that decision is barred under the doctrine of consular nonreviewability.  Mot. at 11.  The Court thus assumes that Rahman suffered an injury in fact and proceeds to the question of consular nonreviewability.

### B.  Consular Nonreviewability

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, unless Congress says otherwise."  Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999)).  "The [INA] does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions."  Dep't of State v. Muñoz, 144 S. Ct. 1812, 1820 (2024).  The State Department therefore argues that the Court is barred from reviewing the State Department's COM revocation.  Mot. at 11–13.  Rahman urges the Court to find that consular nonreviewability does not apply here because (1) noncitizen plaintiffs may bring constitutional claims regarding their admission to the United States, (2) the State Department acted in bad faith, and (3) the adjudication of an immigration visa "is not a foreign policy issue or a

matter of U.S. diplomacy," but rather a question of statutory interpretation.  Opp'n at 9.[7]  IRAP further contends that COM revocations are not visa denials by consular officers.

The Court can quickly dispose of Rahman's constitutional argument.  The Supreme Court has recognized a narrow exception to consular nonreviewability "when the denial of a visa allegedly burdens the constitutional rights of a U. S. citizen."  Muñoz, 144 S. Ct. at 1821 (quoting Trump, 138 S. Ct. at 2419).  But as explained above, Rahman is not a U.S. citizen and he has no constitutional right to enter the United States.  Accordingly, the Court cannot invoke jurisdiction under this exception to the doctrine.

For similar reasons, the Court will not apply any "bad faith" exception.  Whether a consular officer acted in bad faith is not an independent exception to the consular nonreviewability doctrine; rather, once a court finds that a U.S. citizen has a constitutionally protected interest in the visa at issue, "bad faith" becomes relevant to the question of whether the consular officer provided "a facially legitimate and bona fide reason" for denying the visa.  Colindres v. U.S. Dep't of State, 71 F.4th 1018, 1024 (D.C. Cir. 2023) (internal quotation marks omitted).  The Court already found

---

[7] Rahman also argues that "the doctrine of consular nonreviewability should be called into question" on the same reasoning that the Supreme Court overturned Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  Opp'n at 13.  This Court does not have the authority to overturn longstanding Supreme Court precedent.

In Rahman's supplemental brief, he further claims that consular nonreviewability does not apply because (1) "he would adjust his status to permanent residency within USCIS," and (2) "[c]onsular processing only applies to foreign nationals outside the U.S." and he is now physically present in the United States.  Pls.' Suppl. Br. at 4.  But Rahman admits that "COM approval is needed before [he] can apply for adjustment of status to permanent residency with USCIS," and although Rahman currently resides in the United States, he still seeks an SIV for himself and his family members, and the adjudication of that visa application requires consular processing.  Id. at 5; see also USCIS Policy Manual, Vol. 7, Pt. F, Ch. 10, https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-10 (last updated Sept. 25, 2024) ("The special immigrant petition should already be adjudicated and approved when the officer adjudicates the adjustment application. USCIS does not re-adjudicate the special immigrant petition at the time of the adjudication of the adjustment application."); The Steps of the Afghan SIV Process, U.S. Dep't of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov/steps-of-the-afghan-siv-process.html (last visited Sept. 27, 2024).

that no constitutional interest is implicated here, so it has no reason to consider whether the officer acted in bad faith.[8]

The Court will also reject Rahman's argument that the denial of a visa pursuant to an incorrect interpretation of a federal statute "is not a foreign policy decision." Opp'n at 12. First, Rahman's claim that visa denials "may be an exercise of foreign policy" only in "a few rare instances," id. at 13, is incorrect. Rahman has it backwards: a "consular official's decision to issue or withhold a visa [is shielded] from judicial review," except in narrow circumstances. Baan Rao, 985 F.3d at 1024. "For more than a century, the Supreme Court has . . . recognized the power to exclude aliens as . . . a power to be exercised exclusively by the political branches of government." Saavedra Bruno, 197 F.3d at 1159 (internal quotation marks omitted). Thus, the Supreme Court has recognized that "[s]uch matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Id. (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588–89 (1952)).

Second, consular nonreviewability still applies even when a plaintiff challenges the State Department's interpretation or application of a statute or regulation. "[C]ourts may not review [a] consular officer's decision" with respect to a particular visa application "even where it is alleged that the consular officer failed to follow regulations [or] where the applicant challenges the validity of the regulations on which the decision was based." Keyhanpoor v. Blinken, 633 F. Supp. 3d 88, 95 (D.D.C. 2022) (internal quotation marks omitted). Nor can a court review such a decision where it "is alleged to have been based on a factual or legal error." Chun v. Powell, 223 F. Supp. 2d 204, 206 (D.D.C. 2002); see also Van Ravenswaay, 613 F. Supp. 2d at 4.

---

[8] Regardless, Rahman alleges bad faith against BNN employees, not a consular officer. See, e.g., Compl. ¶ 88 ("As a result of his whistleblowing and reporting to the US Army of the fraud and pilferage by former employer and US contractor BNN Logistics, certain individuals with BNN wanted to take revenge against him and made complaints about him to the US Embassy Kabul[.]").

Finally, the Court considers IRAP's argument that Rahman's COM revocation is an "initial eligibility determination that precedes the visa application" and not a decision to admit or refuse a visa applicant by a consular officer.  IRAP Br. at 2.[9]  True, "COM approval was conceived, and is administered, as one stepping stone along the path to Special Immigrant Visa issuance."  Airaj v. United States, Civ. A. No. 15-983 (ESH), 2016 WL 1698260, at *9 (D.D.C. Apr. 27, 2016).  But unlike a § 221(g) refusal, after which "an officer can determine sua sponte that [a visa's] administrative processing is 'completed' and may then re-open and re-adjudicate the applicant's case," a denial of COM approval closes an individual's SIV application, subject only to an appeal of that decision.  Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam); compare id., with The Steps of the Afghan SIV-Process, U.S. Dep't of State Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov/steps-of-the-afghan-siv-process.html (last visited Sept. 27, 2024) ("In your appeal, you should state that you want the Department of State to reopen the COM decision.  You should provide a detailed explanation for why the COM should approve your appeal." (emphasis added)), and Off. of Inspector Gen. U.S. Dep't of State, Information Report: Afghan Special Immigrant Visa Program Metrics 6 (2022), https://www.stateoig.gov/uploads/report/report_pdf_file/aud-mero-22-38.pdf ("[A]n applicant may also reapply [after receiving a COM denial] an unlimited number of times." (emphasis added)).

---

[9] In light of the D.C. Circuit's recent, unpublished decision in Karimova v. Abate, the Court will not decide whether the consular officer's decision to refuse Rahman's application under § 221(g) at the conclusion of his initial interview was a final decision.  See Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2–5 (D.C. Cir. July 24, 2024) (per curiam) (finding that "the visa application remains officially refused" even if in administrative processing). But see Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) ("While a visa application must be either granted or refused at an initial interview, that refusal is often not final.  Instead, a refusal may be entered for 'administrative processing,' and applicants may have an opportunity to provide additional information to establish eligibility." (quoting FAM 306.2-2(A)(a)(2)(A))).  Here, although the consular officer initially "refused" Rahman's case, it was placed in "administrative proceeding," and continued to move forward until his COM approval was revoked.  See Compl. ¶¶ 76–82.  Because Rahman challenges that revocation of his COM approval—not the § 221(g) refusal—the Court only addresses whether that revocation constitutes a final decision.

But the Court need not decide whether consular nonreviewability bars judicial review of Rahman's COM revocation, because Rahman has not yet exhausted his administrative remedies and his claims are thus not ripe.  The ripeness doctrine "prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and "protects agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Nat'l Park Hosp. Ass'n v. DOI, 538 U.S. 803, 807–08 (2003) (cleaned up).  Accordingly, a party is not "entitled to judicial relief . . . until the prescribed administrative remedy has been exhausted."  McKart v. United States, 395 U.S. 185, 193 (1969) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938)); see also Dalton v. Specter, 511 U.S. 462, 469 (1994) ("The APA provides for judicial review only of 'final agency action.'" (quoting 5 U.S.C. § 704)).

The AAPA provides applicants whose COM approval is denied or revoked with a statutory right to appeal that decision within 120 days.  AAPA § 602 (b)(2)(D)(ii)(I); see also Class Action Compl. ("Allies Compl.") ¶ 31, Allies v. Pompeo, No. 1:18-cv-01388 (D.D.C. June 12, 2018). Rahman's COM appeal remains pending with the State Department, and he may very well receive a favorable decision.  See Allies Compl. ¶ 31 ("[M]any COM Appeals are successful and result in COM Approval. . . .  [T]he percentage of successful appeals in 2017 was as high as 66% for Afghan applicants . . . ."); Joint Department of State/Department of Homeland Security Report: Status of the Afghan Special Immigrant Visa Program 7 (2021), https://travel.state.gov/content/dam/visas/ SIVs/Afghan-Public-Quarterly-Report-Q4-October-2021.pdf ("In the Fourth Quarter of FY 2021, 923 Afghans submitted appeals.  Of the appeals adjudicated during this quarter, 564 were approved after the applicant submitted additional information.").  Because the State Department has not yet

adjudicated Rahman's appeal, he has not satisfied the exhaustion requirement and the Court will dismiss his claim challenging the merits of his COM revocation without prejudice.[10]

## II.   Unreasonable Delay

The State Department asserts that Rahman's allegation that the adjudication of his COM revocation appeal has been unreasonably delayed is barred under the first-to-file doctrine because Rahman is a member of the certified class in <u>Allies v. Blinken</u>, No. 1:18-cv-01388 (TSC) (D.D.C.).[11]   Mot. at 14.   The Court agrees that dismissal of Rahman's unreasonable delay claims is warranted.

### A.   <u>Allies</u> Litigation History

In 2018, five plaintiffs brought a putative class action on behalf of individuals who submitted applications for COM approval for an Afghan SIV pursuant to the AAPA, and whose applications had been awaiting government action for longer than nine months. <u>See</u> <u>Allies v. Pompeo</u>, 2019 WL 367841, at *1.   The plaintiffs sought, among other forms of relief, "a declaratory judgment stating that [the State Department] unreasonably delayed the processing and adjudication of all applications that have been in government-controlled steps for longer than nine months" and an order compelling the State Department to adjudicate the SIV applications.   <u>Id.</u>   In 2019, the court concluded that the State Department unreasonably delayed the adjudication of the putative class's SIV applications and ordered the State Department to submit "a plan for promptly

---

[10] Rahman's unreasonable delay claims would not be barred by the consular nonreviewability doctrine, because the doctrine only "applies to a consular officer's <u>substantive</u> decisions to approve or deny a visa application," not "to the <u>procedural</u> considerations," such as whether "a consular officer engaged in unreasonable delay in considering an application."   <u>Al-Gharawy v. U.S. Dep't of Homeland Sec.</u>, 617 F. Supp. 3d 1, 12–13 (D.D.C. July 27, 2022).   Nor would they be barred by the ripeness doctrine.   <u>Karimova</u> casts some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been "refused."   <u>See</u> 2024 WL 3517852, at *3–*6.   The Court will leave exploration of that issue for another day.

[11] Secretary Pompeo was originally sued in his official capacity as acting Secretary of State.   Secretary Blinken replaced him as a defendant when he assumed the Secretary of State position in 2021.

processing and adjudicating the applications of current class members." Allies v. Pompeo, Civ. A. No. 18-cv-01388 (TSC), 2019 WL 4575565, at *5–11 (D.D.C. Sept. 20, 2019).

The court then certified the plaintiffs' putative class under Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, such that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Allies v. Pompeo, 334 F.R.D. 449, 458 (D.D.C. 2020) (quoting Fed. R. Civ. P. 23(b)(2)). The certified class consists of "all people who have (1) applied for an Afghan . . . SIV pursuant to the [AAPA] . . . by submitting an application for [COM] approval, and (2) whose applications have been awaiting government action for longer than 9 months." Id. at 453. The court entered an adjudication plan, which, among other requirements, imposed timing benchmarks for the SIV application process. Allies v. Blinken, 643 F. Supp. 3d 148, 151 (D.D.C. 2022), aff'd, 103 F.4th 807 (D.C. Cir. 2024). In November 2022, in response to "changed circumstances," including the United States' withdrawal from Afghanistan, the court extended the class to include "new class members" who joined after the plan's approval and ordered the parties to submit a new proposed adjudication plan. Id. at 154–57.[12] Defendants' proposed modified adjudication plan is currently pending before the court.

### B. Rahman's Class Membership

At the time Rahman filed this suit in November 2023, he had already been an Allies class member for over a year. Recall that in 2020, the Allies court certified a putative class of "all people who have (1) applied for an Afghan . . . SIV pursuant to the [AAPA] . . . by submitting an

---

[12] On September 17, 2024, the Allies plaintiffs filed a consent motion to amend the class by adding a November 2022 cutoff date. Consent Mot. to Amend the Class Certification Order, Allies v. Blinken, No. 1:18-cv-01388 (D.D.C. Sept. 17, 2024). The proposed class would include, as relevant, individuals who "applied for an Afghan or Iraqi SIV pursuant to the Afghan Allies Protection Act of 2009 . . . by submitting an application for Chief of Mission ('COM') approval, and whose applications had been awaiting government action for longer than 9 months on or before November 30, 2022." Id. at 3.

application for [COM] approval, and (2) whose applications have been awaiting government action for longer than 9 months." Allies v. Pompeo, 334 F.R.D. at 453.  Moreover, because the class was certified pursuant to Federal Rule of Civil Procedure 23(b)(2), the class is "mandatory" and class members may not opt out.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 361–62 (2011).  Rahman appealed his COM revocation in September 2021, and thus became a member of the Allies class in June 2022.

Notably, in its brief supporting Rahman's opposition, IRAP (counsel for the Allies plaintiffs) does not argue that Rahman does not fit the class description.  IRAP only argues that there is no guarantee that he will ultimately be included in the class and bound by the Allies litigation. IRAP Br. at 8.  Accordingly, IRAP maintains that Rahman's unreasonable delay claims are not precluded by the ongoing Allies class action.  Id.  True, a "court conducting a class action cannot predetermine the res judicata effect of its judgment." Harrison v. Lewis, 559 F. Supp. 943, 947 (D.D.C. 1983) (citing Fed. R. Civ. P. 23(c)(3) advisory committee's note to 1966 amendment). And it is possible that the Allies certified class may be modified or decertified by the time the court enters final judgment.  See Brown v. District of Columbia, 928 F.3d 1070, 1085 (D.C. Cir. 2019) ("[I]f [on remand] the district court concludes that the single, requested injunction will not provide all members of the class with a better opportunity to transition to the community, it can modify or decertify the class under Rule 23(b)(2).").

But the Court is not deciding at this stage whether Rahman is—or will be—precluded from bringing an individual claim for the adjudication of his COM revocation appeal.  Rather, the Court considers whether permitting Rahman to bring his unreasonable delay claims would jeopardize two of Rule 23's primary purposes: avoidance of duplicative litigation and inconsistent adjudications.  Rahman tacitly admits that he is an Allies class member by seeking the same type

of declaratory relief the <u>Allies</u> class members seek.  <u>See</u> Compl. at 28.  "Individual suits for injunctive and equitable relief . . . cannot be brought where there is an existing class action.  To permit them would allow interference with the ongoing class action."  <u>McNeil v. Guthrie</u>, 945 F.2d 1163, 1165 (10th Cir. 1991); <u>see also</u> <u>Norris v. Slothouber</u>, 718 F.2d 1116, 1117 (D.C. Cir. 1983) ("Because [individual plaintiff's] allegations substantially overlap those in [pending class action], his case should be referred to the district judge before whom the [class] action is pending."); <u>Bryan v. Werner</u>, 516 F.2d 233, 239 (3d Cir. 1975); <u>Horns v. Whalen</u>, 922 F.2d 835 (4th Cir. 1991) (per curiam); <u>Gillespie v. Crawford</u>, 858 F.2d 1101, 1103 (5th Cir. 1988); <u>Groseclose v. Dutton</u>, 829 F.2d 581, 584 (6th Cir. 1987); <u>Goff v. Menke</u>, 672 F.2d 702, 704 (8th Cir. 1982); <u>cf. Herron v. Beck</u>, 693 F.2d 125, 127 (11th Cir. 1982) ("[I]t might have been proper to consolidate Herron's claims with the class litigation or to stay Herron's action pending referral of Herron's complaints to the class counsel . . . .").  The Court concludes that Rahman's unreasonable delay claims will interfere with the ongoing <u>Allies</u> litigation addressing that same question and hence will dismiss Counts One Two, and Three without prejudice.

### C.  First-to-File Doctrine

Alternatively, the Court would dismiss Rahman's unreasonable delay claims under the first-to-file doctrine.  Under this doctrine, district courts have discretion to stay or dismiss a pending suit when confronted with parallel litigation filed in two separate forums.  <u>Handy v. Shaw</u>, 325 F.3d 346, 349 (D.C. Cir. 2003).  "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts.  <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) (citations omitted).  Moreover, it is well-established in the D.C. Circuit that "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to

be allowed to proceed to its conclusion first." Wash. Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted).  However, the D.C. Circuit has warned that because "countervailing equitable considerations, where present, cannot be ignored," the rule should not be applied mechanically if the second-filed action deserves priority.  Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 627 (D.C. Cir. 1975).  Nonetheless, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."  Ragonese, 617 F.2d at 830; see also Columbia Plaza, 525 F.2d at 626 ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.").  Because Allies precedes this case, the parties substantially overlap, the unreasonable delay issues overlap, and equitable considerations do not dictate that this case should proceed over the Allies case, the Court would alternatively dismiss Rahman's unreasonable delay claims without prejudice.

There is no question that the parties substantially overlap.  Defendants in both cases include government officials who work in the Department of State and the Department of Homeland Security; Rahman—as a member of the Allies class—is a plaintiff in both cases.  And Rahman appears to concede that the issues in his case overlap with the issues in the Allies litigation.  See Opp'n at 20 ("[T]he issues here are not identical.  Plaintiffs are arguing not only delay but also that the Dept of State incorrectly applied the statute . . . as well as bad faith on the part of DOS . . . .").  This Court is not persuaded by Rahman's attempts to distinguish the issues in his case from those in Allies.  While Rahman has alleged that the State Department incorrectly applied the AAPA, this allegation relates to the merits of Rahman's COM revocation, which, for reasons discussed above, the Court concludes he cannot challenge at this time.  Thus, the only claims upon

which he may move forward at this stage are his unreasonable delay claims, which mirror the claims in <u>Allies</u> pursued on behalf of Rahman and other class members.

Finally, "countervailing equitable considerations" do not dictate that this second-filed action should be allowed to proceed, where the parties will be present in both cases, both cases were filed in the same district, and the <u>Allies</u> court has more experience with the specific Afghan SIV unreasonable delay issues involved.  <u>See</u> <u>Taylor Energy Co. LLC v. United States</u>, Civ. A. No. 20-1086 (JDB), 2020 WL 6075693, at *10 (D.D.C. Oct. 14, 2020).  And to the extent Rahman urges the Court to consider the State Department's "bad faith" as an equitable consideration, Rahman has only plausibly alleged any act in bad faith on the part of a BNN employee, not the State Department.  Hence, for reasons of comity and judicial economy, the Court would alternatively dismiss Rahman's unreasonable delay claims.

## III.    Child Status Protection Act

In Rahman's amended complaint, he contends that his children "were all under the age of 21 at the time the SIV was filed," and still would have been under the age of 21 at the time of a visa decision "if the SIV processing would have been complete within nine months."  Compl. ¶ 101; <u>see</u> <u>id.</u> ¶ 102.  Rahman does not specify the relief he seeks on this basis, but reading his complaint generously, the Court understands Rahman to be seeking an order that the State Department must consider his children as "derivative children" under his SIV application, even though they are no longer minor children.  The State Department argues that Rahman has not properly pled any valid claim for relief under the CSPA, and even if he had, any CSPA claim would not be ripe.  Mot. at 21.  The Court agrees that any CSPA claim is not ripe because Rahman's appeal of the revocation of his COM approval is pending.  The INA entitles derivative children to the same status as their applicant parent.  8 U.S.C. § 1153(d).  Thus, unless or until Rahman

succeeds in his appeal of his COM revocation, no State Department official has reason to consider Rahman's children's eligibility for an SIV.  Accordingly, the Court will dismiss Rahman's CSPA claim without prejudice.

### <u>Conclusion</u>

For the reasons explained above, the Court will grant the State Department's motion to dismiss and will dismiss plaintiffs' amended complaint without prejudice.  A separate Order to this effect accompanies this Memorandum Opinion.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>September 27, 2024</u>